`

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, et al., | Case No. 19-cv-00765-HSG |
|---|---|
| Plaintiffs, | **ORDER DENYING MOTION FOR SUMMARY JUDGMENT** |
| v. | Re: Dkt. No. 64 |
| PORIFERA INC, | |
| Defendant. | |

Pending before the Court is Defendant Porifera, Inc.'s motion for summary judgment. Dkt. No. 64. The Court finds this matter appropriate for disposition without oral argument and the matter is deemed submitted. *See* Civil L.R. 7-1(b). For the reasons detailed below, the Court **DENIES** the motion.

## I. BACKGROUND

In February 2019, Plaintiff Joseph Mendelssohn filed a *qui tam* action under seal pursuant to 31 U.S.C. § 3730(b). The United States government chose not to intervene in this matter, and the case was later unsealed in November 2020. *See* Dkt. No. 12.

As explained in more detail below, the facts in this case are largely disputed. However, the parties agree that Plaintiff was the Vice President of Business Development and Administration for Porifera, and worked for the company from 2011 until he was terminated by Olgica Bakajin, the CEO, in 2018. *Compare* Dkt. No. 64 at 8–15, *with* Dkt. No. 66 at 2–10. As part of his duties, Plaintiff assisted with the bookkeeping and submitted invoices for State and federal government projects. *See* Dkt. No. 65, Ex. C ("Mendelssohn Depo.") at 75:16–76:13, 77:15–78:10.

Plaintiff alleges that historically, Porifera employees received training about how to keep their time, and they used paper timesheets to input hours on each of the projects on which they

worked. *See* Dkt. No. 66-8 ("Mendelssohn Decl.") at ¶ 6; *see also* Dkt. No. 66-10, Ex. B. Under the timekeeping policy, any changes to timesheets had to be made in ink, initialed by the employee, and with an explanation for the correction. *See id.*; *see also* Dkt. No. 66-6, Ex. E ("Bakajin Depo.") at 65:21–66:13. The company's policy further cautioned against "[m]anipulation or falsification of time charges." *See* Dkt. No. 66-10, Ex. B.

Plaintiff states that despite the company's exacting timekeeping policies, during a senior management meeting in May 2018, Porifera's CEO Bakajin told those present to "double bill" to a project with the California Energy Commission ("CEC"), referred to internally as the "Recycler." *See* Mendelssohn Depo. at 188:15–23. Plaintiff recounts that Bakajin said that "everybody needs to be billing to the [Recycler matter] because we have about a million dollars that we can bill to." *See id.* at 187:19–188:23. Plaintiff found this directive concerning, and thought it "seemed fraudulent" because he knew from previous discussions with Bakajin that the company only had approximately $250,000 of work left to do on that project. *See id.*

Following the meeting, Plaintiff contends that he witnessed Bakajin telling others to amend their timesheets retroactively, and she asked Plaintiff to amend his own timesheets from March and April 2018. *See* Mendelssohn Decl. at ¶ 10; *see also* Mendelssohn Depo. at 205:6–206:24. When Plaintiff pushed back and said his work was split equally between the Recycler and another project, Bakajin repeated that she wanted him to bill the Recycler matter anyway. *See id.* Plaintiff said he was intimated and felt his job was in jeopardy as a result, so he revised his timesheet as she asked. *See id.*

Plaintiff contends that a few days later he told the company's Controller Silvana Shepard, a Certified Public Accountant ("CPA"), that he was concerned about the company's recent billing practices. *See* Mendelssohn Depo. at 188:24–189:19. In response, Shepard explained that Bakajin had rejected her suggestion to use electronic timekeeping, and Shepard believed the only reason to use paper timesheets is to eliminate a paper trail to "commit fraud by having the flexibility to do what [Bakajin] is doing." *See* Mendelssohn Depo. at 191:7–192:16. Plaintiff said he had no need to tell Shepard explicitly that he was worried about fraud because she had already raised those concerns herself during the conversation. *See id.* at 192:17–21. A few weeks later, when the

2

March and April 2018 invoices were ready to send to the CEC for the Recycler project, Plaintiff's review revealed potential fraudulent billing, and he delayed signing the invoices. *See* Mendelssohn Depo. at 193:1–22; Mendelssohn Decl. at ¶ 20. Instead, he interviewed several employees about their timesheets. *See* Mendelssohn Decl. at ¶ 13. Plaintiff asserts that these conversations confirmed his fears that Porifera employees were being told to bill for government projects that they were not actually working on. *See id.* at ¶¶ 13–14, 19. Mendelssohn said that Shepard even confirmed that Bakajin had told her to update her own timesheets to bill the Recycler project over other projects she had actually been working on. *See, e.g.*, Dkt. No. 66-15, Ex. G at 2:8–3:17.

Plaintiff said that he expressed his concerns to Senior Director of Engineering Charlie Benton, as well as raising other questions about stock options and hiring. *See* Mendelssohn Decl. at ¶ 13. During his deposition, Benton said that he had relayed his conversation with Plaintiff to Bakajin, though he could not recount the specifics of their conversation. *See* Dkt. No. 66-7, Ex. F at 88:3–89:24. Plaintiff also told Shepard that he was no longer comfortable signing off on the invoices for the CEC. *See* Mendelssohn Depo. at 193:1–194:6; *see also* Dkt. No. 66-5, Ex. D ("Shepard Depo.") at 100:11–101:11. Plaintiff then directed Shepard to give the timesheets to Bakajin to sign instead. *See* Mendelssohn Depo. at 193:1–194:6; *see also* Shepard Depo. at 101:12–102:2.

Plaintiff states that Bakajin called him into her office the next business day to discuss what she called "the issues of trust." *See* Mendelssohn Depo. at 174:9–175:19, 178:7–15. She asked Plaintiff to discuss his contributions to the company, as well as his compensation. *See id.* Afterward, she gestured for Plaintiff to sign the invoices that Shepard had left on Bakajin's desk. *See id* at 198:2–199:20. Plaintiff felt like it was intended as some kind of "trust test" or test of his loyalty. *See id.*; *see also id.* at 201:7–203:18. In response, Plaintiff told Bakajin that he was "extremely uncomfortable signing those invoices. They don't reflect what was done. The work that was done." Mendelssohn Depo. at 198:2–199:17. Bakajin again told Mendelssohn, "[y]ou need to sign them." *Id.* And Mendelssohn responded, "I'm uncomfortable. I'm not an officer who can attest to the accuracy of these." *Id.* She nevertheless ordered him to do so, refusing to

3

sign them herself. *Id.*

Following this meeting, Bakajin sent an email to Board Member Jeff Jensen, recounting work performance concerns she had about Plaintiff. *See* Bakajin Depo., Ex. 14. She concluded that "he should go," and she would consider the timing of and severance for his termination. *Id.* Although following the meeting Plaintiff asserts that Bakajin told other employees to redo their May and June 2018 timesheets, she did not direct him to do so. *See* Mendelssohn Decl. at ¶¶ 24–25.

At the end of July 2018, Bakajin and Jensen met with Plaintiff, at which point Bakajin said that she could not work with Plaintiff anymore because "mutual trust was broken." *See* Mendelssohn Depo. at 183:2–184:9. Plaintiff asked to speak to Jensen alone, at which point he confided that he believed Bakajin was terminating him because of his investigation into the fraudulent billing. *See id.* at 196:17–197:5. Plaintiff contends that he was terminated from Porifera in retaliation for his investigation and opposition to Porifera's improper billing practices. *See* Dkt. No. 22 ("SAC") at ¶¶ 88–96. Plaintiff brings causes of action for (1) retaliation under the False Claims Act; (2) retaliation under the California False Claims Act; (3) whistleblower retaliation under Cal. Lab. Code § 1102.5; and (4) wrongful termination in violation of public policy.[1] *Id.* at ¶¶ 97–117.

According to Porifera, Plaintiff's performance had deteriorated over time, he was not engaged with work, and he was preoccupied by concerns over his compensation. *See* Dkt. No. 64 at 9–11, 13–15. Porifera contends that the company ultimately terminated his employment because of this salary dispute. *Id.* at 14–15. Porifera argues that even if Plaintiff had been investigating billing issues, he did not raise concerns with anyone until after his termination. *Id.* Porifera now moves for summary judgment.

## II. EVIDENTIARY OBJECTIONS

As an initial matter, Porifera raises several objections to the evidence that Plaintiff seeks

---

[1] Plaintiff brings the claim for retaliation under the False Claims Act, 31 U.S.C. § 3730(h), against Defendants Porifera, Bakajin, and Jensen. *See* SAC at ¶¶ 97–103. His remaining claims are only brought against Porifera.

to introduce in support of his opposition to the motion for summary judgment. *See* Dkt. No. 67 at 6–7. Porifera argues, for example, that Plaintiff is not competent to conclude that any alleged changes to timesheets were in fact fraudulent. *See id.* at 6. Whether the timesheets were in fact fraudulent is not at issue in this case. *See, e.g.*, *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1103 (9th Cir. 2008) (noting that "[t]he elements differ for a [False Claims Act] violation claim and a [False Claims Act] retaliation claim" because a retaliation claim only requires "a plaintiff [to] show that he or she suspected that the defendant submitted a false claim—not that the defendant actually submitted one"); *U.S. ex rel. Hopper v. Anton*, 91 F.3d 1261, 1269 (9th Cir. 1996) (holding that to engage in a protected activity for purposes of a retaliation claim under 31 U.S.C. § 3730(h), the plaintiff must only "investigat[e] matters which are calculated, or reasonably could lead, to a viable [Federal Claims Act] action"). And in any event, Plaintiff has presented different versions of timesheets reflecting changes to time billed to the Recycler project, as well as recounted conversations he had with Bakajin and other employees about time they spent on projects and their billing practices. Porifera further argues that much of Plaintiff's evidence is hearsay. *See id.* at 6–7. It points out, for example, that much of Plaintiff's evidence includes interviews he had with other Porifera employees, including Shepard, about their timesheets. *See id.* at 7.

"To survive summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial, as long as the party satisfies the requirements of Federal Rules of Civil Procedure 56." *Fraser v. Goodale*, 342 F.3d 1032, 1036–37 (9th Cir. 2003) (quotation omitted). At this stage, the focus is on the admissibility of the contents of the evidence, not its form. *Fraser*, 342 F.3d at 1036; *see also JL Beverage Co., LLC v. Jim Beam Brands Co.*, 828 F.3d 1098, 1110 (9th Cir. 2016) ("[A]t summary judgment a district court may consider hearsay evidence submitted in an inadmissible form, so long as the underlying evidence could be provided in an admissible form at trial, such as by live testimony.") "Accordingly, district courts in this circuit have routinely overruled authentication and hearsay challenges at the summary stage where the evidence could be presented in an admissible form at trial, following *Fraser*." *Hodges v. Hertz Corp.*, 351 F. Supp. 3d 1227, 1232 (N.D. Cal. 2018) (citations omitted).

1   Because Porifera raised these evidentiary objections in reply, Plaintiff did not have an
2   opportunity to respond.  However, there is no evidence before the Court suggesting that Plaintiff
3   could not call these employees as witnesses to discuss their conversations about their timesheets
4   and possible fraud at the company.  As noted above, Shepard herself was deposed as part of this
5   case.  Accordingly, the Court **OVERRULES** Porifera's evidentiary objections at this time on the
6   basis that the evidence could be presented in an admissible form at trial.  Porifera can renew any
7   objections at trial to the extent Plaintiff is unable to remedy any authentication or hearsay issues.

### III.     LEGAL STANDARD

Summary judgment is proper when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute is "genuine" if there is evidence in the record sufficient for a reasonable trier of fact to decide in favor of the nonmoving party.  *Id.*  The Court views the inferences reasonably drawn from the materials in the record in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986), and "may not weigh the evidence or make credibility determinations," *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997), *overruled on other grounds by Shakur v. Schriro*, 514 F.3d 878, 884–85 (9th Cir. 2008).

The moving party bears both the ultimate burden of persuasion and the initial burden of producing those portions of the pleadings, discovery, and affidavits that show the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Where the moving party will not bear the burden of proof on an issue at trial, it "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).  Where the moving party will bear the burden of proof on an issue at trial, it must also show that no reasonable trier of fact could not find in its favor. *Celotex Corp.*, 477 U.S. at 325.  In either case, the movant "may not require the nonmoving party to produce evidence

6

1  supporting its claim or defense simply by saying that the nonmoving party has no such evidence."
2  *Nissan Fire & Marine Ins. Co.*, 210 F.3d at 1105.  "If a moving party fails to carry its initial
3  burden of production, the nonmoving party has no obligation to produce anything, even if the
4  nonmoving party would have the ultimate burden of persuasion at trial."  *Id.* at 1102–03.

5      "If, however, a moving party carries its burden of production, the nonmoving party must
6  produce evidence to support its claim or defense."  *Id.* at 1103.  In doing so, the nonmoving party
7  "must do more than simply show that there is some metaphysical doubt as to the material facts."
8  *Matsushita Elec. Indus. Co.*, 475 U.S. at 586.  A nonmoving party must also "identify with
9  reasonable particularity the evidence that precludes summary judgment."  *Keenan v. Allan*, 91
10  F.3d 1275, 1279 (9th Cir. 1996).  If a nonmoving party fails to produce evidence that supports its
11  claim or defense, courts enter summary judgment in favor of the movant.  *Celotex Corp.*, 477 U.S.
12  at 323.

### IV. DISCUSSION

#### A. Retaliation

The parties appear to agree that to succeed under both the Federal and California False Claims Act, (1) Plaintiff must have engaged in protected activity; (2) Porifera must have been aware of such protected activity; and (3) Porifera must have discriminated against Plaintiff because he engaged in protected activity.  *See Moore v. California Inst. of Tech. Jet Propulsion Lab'y*, 275 F.3d 838, 845 (9th Cir. 2002); *McVeigh v. Recology San Francisco*, 213 Cal. App. 4th 443, 455 (Cal. Ct. App. 2013) (reciting elements for Cal. Gov't Code § 12653).  Similarly, to succeed on his retaliation claim under California Labor Code § 1102.5, Plaintiff must establish that (1) he participated in protected activity under the statute; (2) he was subjected to an adverse employment action; and (3) there is a causal nexus between his protected activity and the adverse action.  *See Lawson v. PPG Architectural Finishes, Inc.*, 12 Cal. 5th 703, 710 (Cal. 2022).

Porifera argues that it is entitled to summary judgment on all three of Plaintiff's retaliation claims because there is no evidence that Plaintiff (1) engaged in protected activity; (2) that Porifera was aware of such protected activity; or (3) that Plaintiff was terminated because of his protected activity.  *See* Dkt. No. 64 at 16–28.  Rather, Porifera urges that the evidence illustrates

1  that Plaintiff was terminated because of concerns about his performance and disputes over his
2  compensation.  *Id.*
3        Porifera's arguments, however, plainly require the Court to sidestep genuine disputes of
4  material fact.  The Court finds at this stage that there is sufficient evidence from which a
5  reasonable factfinder could conclude that Plaintiff was investigating and objecting to participate in
6  fraudulent billing practices on government contracts; Porifera was aware of this protected activity;
7  and Porifera fired him because of it.  To note just a few nonexhaustive examples, the evidence
8  viewed in the light most favorable to Plaintiff reflects that:

- Plaintiff was present for a meeting in which Bakajin told senior management to bill time to the Recycler over other projects.  *See* Mendelssohn Depo. at 187:19–188:23.  Bakajin also told Plaintiff directly that he should allocate his time to the Recycler, despite the fact that he may have in actuality split his time equally between the Recycler and another project.  *See* Mendelssohn Decl. at ¶ 10; *see also* Mendelssohn Depo. at 205:6–206:24.  At this time, Plaintiff raised concerns about Bakajin's request.  *Id.*
- Plaintiff then interviewed employees about their billing practices, reviewed timesheets, and conferred with the Controller about his concerns that Bakajin was asking employees to retroactively change timesheets, in contravention of Porifera's own policies.  *See, e.g.*, Mendelssohn Depo. at 188:24–194:6; Mendelssohn Decl. at ¶ 13.
- At least according to Plaintiff, he raised these concerns with Benton, who spoke with Bakajin.  *See, e.g.*, Mendelssohn Decl. at ¶ 13; Dkt. No. 66-7, Ex. F at 88:3–89:24.  Plaintiff also explicitly told Bakajin that he did not want to sign the March and April 2018 timesheets because they did not reflect the work that was actually done on the projects and he could not "attest to the accuracy" of the timesheets.  *See* Mendelssohn Depo. at 198:2–199:17.  Plaintiff said he believed Bakajin was testing him as a sign of his loyalty.  *See id.*
- Bakajin sent an email to Jensen saying she wanted to terminate Plaintiff's

employment the same day as this meeting when he refused to sign the revised timesheets.  *See* Bakajin Depo., Ex. 14.

- When Bakajin terminated Plaintiff's employment, she spoke about "issues of trust" and breaking that trust, rather than any alleged deficiencies in Plaintiff's performance.  *See id.* at 183:2–184:9.

Porifera seems to suggest that because Plaintiff never used the words "fraud" or "illegality" when speaking to employees at Porifera about billing problems with the Recycler project, he was not actually engaged in protected activity.  *See, e.g.*, Dkt. No. 64 at 17–19.  But there are no magic words required to invoke protection under the Federal or California False Claims Acts.  *See, e.g.*, *Mendiondo*, 521 F.3d at 1104 (finding that plaintiff "engaged in protected activity if she reasonably believed that [the employer] was possibly committing fraud against the government, and she investigated the possible fraud"); *McKenzie v. BellSouth Telecommunications, Inc.*, 219 F.3d 508, 516 (6th Cir. 2000) (noting that the plaintiff "need not use formal words of 'illegality' or 'fraud'" as long as she alleges "activity with a nexus to a *qui tam* action, or fraud against the United States government").  Plaintiff has presented evidence that he looked into and raised concerns that Porifera was intentionally changing timesheets to bill work to government projects that employees did not actually perform, thus defrauding the government.  Porifera further argues that because part of Plaintiff's job was collecting timesheets, Plaintiff would have to provide even more specific notice that he was engaging in protected activities.  *See* Dkt. No. 64 at 20–21.  It would not be enough to show the employer's knowledge of activities that fall within the plaintiff's job duties.  *See United States ex rel. Campie v. Gilead Scis., Inc.*, 862 F.3d 890, 908 (9th Cir. 2017).  But Plaintiff has asserted that his duties did not include investigating or discovering fraud.  *See* Mendelssohn Decl. at ¶ 5.  And at least as alleged, Bakajin seemed to push back on Plaintiff's attempts to scrutinize the nature and extent of any changes to the timesheets.

At trial, Porifera will have the opportunity to argue that Plaintiff's investigation into the company's billing practices was not enough to alert anyone that he was investigating fraud or

9

contemplating a *qui tam* action. Although the evidence is not overwhelming, making all inferences in Plaintiff's favor as it must at this stage, the Court finds that Plaintiff has raised at least one genuine dispute of material fact precluding summary judgment as to Plaintiff's retaliation claims. *See* Fed. R. Civ. P. 56(a).

### B. Wrongful Termination

To establish her claim for wrongful termination in violation of the public policies embodied in the Federal False Claims Act, 31 U.S.C. §§ 3729 *et seq.* and the California Labor Code § 1102.5, plaintiff must provide similar evidence to his retaliation claims: that he was terminated based on his complaints about potentially false billing practices. *See Mendiondo*, 521 F.3d at 1105; *see also Haney v. Aramark Unif. Servs., Inc.*, 121 Cal. App. 4th 623, 641 (Cal. Ct. App. 2004). As discussed above, Plaintiff has provided sufficient evidence to establish at least one triable issue of fact as to his retaliation claims. The same evidence precludes summary judgment on his claim for wrongful termination in violation of public policy. Accordingly, the Court **DENIES** Porifera's motion for summary judgment as to this claim as well.

### V. CONCLUSION

Because the Court finds that there are disputed issues of material fact, the Court **DENIES** the motion for summary judgment. The Court further **DIRECTS** the parties to meet and confer and file a joint status report by June 16, 2022, regarding whether the parties believe it would be productive to refer this case to a magistrate judge for a settlement conference in advance of the trial. The Court cautions that because the June 28, 2022, pre-trial conference and July 11, 2022, trial dates remain in effect, the parties may have to simultaneously prepare for the settlement conference and trial.

**IT IS SO ORDERED.**

Dated:  6/15/2022

HAYWOOD S. GILLIAM, JR.
United States District Judge

10